**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Harry Stuart Kinder,

    Plaintiff

v.

LM Insurance Corporation and Liberty Mutual Insurance Company,

    Defendants

Case No.: 2:23-cv-01338-JAD-BNW

**Order Remanding Case Back to State Court, Denying Without Prejudice Pending Motions, and Closing Case**

[ECF Nos. 47, 48, 49, 51, 57]

Plaintiff Harry Stuart Kinder sues LM Insurance Corporation and Liberty Mutual Insurance Company[1] over Liberty Mutual's 2022 determination that a leak in Kinder's dishwasher water-supply line was not covered by the escape-of-water endorsement in his homeowner's insurance policy. The parties have crossmoved for summary judgment.[2] But, because reviewing the docket in this case raised concerns that Kinder's claims could not reach the $75,000 amount-in-controversy requirement for diversity jurisdiction to attach, I ordered Liberty Mutual to show cause why this case should not remanded for lack of subject-matter jurisdiction. Because Liberty Mutual has not met its burden to establish its right to remove this case to federal court, I remand this case back to state court and deny without prejudice all pending motions.

---

[1] I refer to the defendants collectively as "Liberty Mutual" throughout this order.
[2] ECF Nos. 47, 48, 49.

**Discussion**

"Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it."[3] The defendants invoked this court's federal jurisdiction based on diversity when it removed this case from state court.[4] For diversity jurisdiction to exist, the amount in controversy must exceed $75,000.[5] When "a plaintiff's state-court complaint does not specify a particular amount in damages, the removing party bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the threshold at the time of removal."[6]

When Liberty Mutual removed this case, it acknowledged that the complaint did not indicate how much Kinder was seeking in damages, but it averred that Kinder "told defendants' counsel in a phone call that [he] was seeking more than $75,000, exclusive of interest and costs."[7] In Liberty Mutual's response to the order to show cause, it confirms that Kinder's representation is the only competent evidence that it relied on when it removed this case to federal court.[8] Though declarations concerning an amount-in-controversy can satisfy a defendant's burden on removal, I find that the declaration of Liberty Mutual's lawyer stating that Kinder is seeking more than $75,000 is insufficient here. As I explained in the order to show cause, that representation is so at odds with the apparent value of Kinder's claims that I do not consider it sufficient to show, by a preponderance of the evidence, that the amount-in-

---

[3] *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).
[4] *See* ECF No. 1 at 2.
[5] 28 U.S.C. § 1332(a).
[6] *Canela v. Costco Wholesale Corp.*, 971 F.3d 845, 850 (9th Cir. 2020) (cleaned up).
[7] ECF No. 1 at 2.
[8] ECF No. 63 at 3.

controversy requirement is met. As I highlighted in my order, Kinder's claims are concerned primarily with about $4,000 in leak damages, which falls far short of the statutory floor. In its response to that order, Liberty Mutual concedes that it can scrape together only $19,007 in compensatory damages from Kinder's allegations.

Liberty Mutual also contends that Kinder's requests for punitive damages and allegations of emotional distress suffice to bring the value of this case above $75,000. It calculates that Kinder alleged $19,007 in compensatory damages at the time of removal.[9] And because Kinder seeks punitive damages and alleges economic distress, Liberty Mutual contends that a 4:1 ratio of compensatory-to-punitive damages would result in an amount in controversy above $75,000.[10]

I'm not persuaded by Liberty Mutual's calculations. Courts in this circuit have persuasively held that, though punitive damages may be included in determining the amount of controversy, "the mere possibility of a punitive[-]damages award is insufficient to prove that the amount in controversy has been met."[11] Accordingly, courts have concluded that defendants "must present evidence that punitive damages will more likely than not exceed the amount needed to increase the amount in controversy to $75,000."[12] Introducing evidence of jury verdicts in analogous cases is one way to meet that burden.[13]

---

[9] *Id.* at 4.

[10] *Id.* at 5–7.

[11] *Burk v. Med. Sav. Ins. Co.*, 348 F. Supp. 2d 1063, 1069 (D. Ariz. 2004) (citing *Surber v. Reliance Nat. Indem. Co.*, 110 F. Supp. 2d 1227, 1232 (N.D. Cal 2000)).

[12] *Id.* (citing *McCaa v. Mass. Mut. Life Ins. Co.*, 330 F. Supp. 2d 1143, 1149 (D. Nev. 2004)).

[13] *Id.*

The defendants rely primarily on *Republic Insurance Co. v. Hires*[14] to show that Kinder's requests for punitive damages should be considered in the amount-in-controversy calculation.[15] In *Hires*, the plaintiff submitted a claim for homeowner's insurance to cover damage from a robbery.[16] After an adjuster assured Hires that various furniture replacements would be covered, Republic Insurance denied some claims and offered reduced coverage for others based on an internal policy to "begin negotiations at a reduced figure, leaving the policyholder with the obligation of arguing for a larger amount."[17] Republic then conducted an excessively thorough investigation of the robbery that involved interviewing Hires's neighbors about his "alleged extramarital activities and possible involvement in the burglary."[18] The investigation turned Hires's neighbors against him and, apparently not finding what it was looking for, Republic opened yet another investigation that involved questioning Hires's attorney about his involvement in the robbery and suggesting that he had a sexual relationship with his client.[19] The Supreme Court of Nevada held that a punitive-damages award approximately 12 times greater than Hires's compensatory-damages award was justified in light of Republic's oppressive behavior.[20]

*Hires* is not analogous to this case. The defendants focus on the fact that Hires and Kinder both alleged delayed payment of a claim and fraudulent misrepresentations concerning

---

[14] *Republic Ins. Co. v. Hires*, 810 P.2d 790 (Nev. 1991).
[15] ECF No. 63 at 6.
[16] *Hires*, 810 P.2d at 791.
[17] *Id.*
[18] *Id.* at 792.
[19] *Id.*
[20] *Id.* at 793.

4

policy language.  But Kinder's allegations about Liberty Mutual's conduct do not compare to Republic's harmful and blameworthy conduct.  Kinder alleges that Liberty Mutual misrepresented his policy's escape-of-water endorsement in a manner that excluded coverage for the water leaks he experienced.  There are no allegations indicating that Liberty Mutual engaged in oppressive behavior in a manner equal to (or even in the same ballpark as) Republic's conduct in *Hires*.  So the Nevada Supreme Court's finding that Republic was liable for a punitive-damages award does not persuade me that punitive damages are more likely than not to meet the amount-in-controversy threshold here.

Liberty Mutual's economic-distress arguments fare no better.  It contends that courts in this district "regularly consider claims for general damages and emotional distress in determining the amount in controversy."[21]  It cites *Albert H. Wohlers & Co. v. Bartgis*, a case in which the insurer denied claims for a medical procedure that Bartgis had received pre-authorizations for under a harsh ancillary-charges limitation that the insurer concealed from Bartgis.[22]  The Nevada Supreme Court concluded that emotional-distress damages against the insurer were appropriate because the insurer's conduct deprived Bartgis "of her peace of mind and sense of security during a post-operative and vulnerable juncture in her life," causing "numerous stress-related bladder infections, loss of appetite, loss of sleep," dramatic weight loss, and anxiety.[23]

Kinder's homeowner's insurance claim is not comparable to the denial of medical insurance in *Bartgis*; nor are the allegations of Liberty Mutual's bad faith comparable to the concealment and active misrepresentations that the insurer in *Bartgis* engaged in.  Nor does

---

[21] ECF No. 63 at 7.
[22] *Albert H. Wohlers & Co. v. Bartgis*, 969 P.2d 949, 956–57 (Nev. 1998).
[23] *Id.* at 958.

Kinder allege any details about the emotional distress he allegedly suffered from Liberty Mutual's actions.[24]  So I conclude that Liberty Mutual's reliance on *Bartgis* does not meet its burden to show that Kinder's emotional-distress allegations are more likely than not to result in a damages award that would clear the $75,000 threshold.[25]

After a careful review of Kinder's complaint and Liberty Mutual's response to the order to show cause, I conclude that Liberty Mutual has not met its burden of establishing by a preponderance of the evidence that this case exceeded the $75,000 amount-in-controversy threshold when it was removed.  So, finding that this court lacks subject-matter jurisdiction over this case, I remand it back to state court, and I deny all pending motions without prejudice to their refiling in the state-court case.

## Conclusion

IT IS THEREFORE ORDERED that, because this court lacks jurisdiction over this case, the Clerk of Court is directed to **REMAND THIS CASE** back to the Eighth Judicial District Court for Clark County, Nevada, Case No. A-23-871713, Department 25; **SEND** a copy of this remand order, along with the docket sheet for this case to the state court, and **CLOSE THIS CASE**.

---

[24] *See generally* ECF No. 1 at 8–26 (Kinder's state-court complaint).

[25] Liberty Mutual also relies on *Guaranty Nat. Ins. Co. v. Potter*, 912 P.2d 267 (Nev. 1996), to contend that juries have awarded emotional-distress damages in bad-faith insurance cases.  In *Potter*, the insurer required that the plaintiffs receive independent medical examinations following an accident with an express promise that it would pay for those examinations, but the insurer reneged on that promise when it came time to pay.  *Potter*, 912 P.2d at 272.  The Potters couldn't pay their medical bills and were threatened with litigation by the medical providers because of the insurer's actions.  *Id.* at 271–72.  *Potter* is not analogous to this case, as the reason for the emotional-distress damages in *Potter*—enduring "two years of threats and subsequent litigation" and damage to their credit reputation—is not alleged here. *Id.* at 273.

IT IS FURTHER ORDERED that all pending motions **[ECF Nos. 47, 48, 49, 51, 57] are DENIED without prejudice** to their refiling in state court.  So this case returns to state court with no motions pending.

_____
U.S. District Judge Jennifer A. Dorsey
June 13, 2025